# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| ANITA CLAY-BROWN, ) | |
|     Plaintiff, ) | |
| vs. ) | CV 12-J-3988-NE |
| CITY OF DECATUR, ALABAMA, ) et al., | |
| ) | |
|     Defendants. ) | |

## **MEMORANDUM OPINION**

Pending before the court is the defendant City of Decatur's motion to dismiss the Amended Complaint and brief in support thereof (doc. 28 & 29) and defendant Brandon Abbott's motion to dismiss portions of the Amended Complaint and brief in support thereof (doc. 30 & 31). Plaintiff has filed a response in opposition and in the alternative a motion for leave to amend the complaint (doc. 35). Defendant City of Decatur has filed a reply brief (doc. 36). Having considered the foregoing, the court finds as follows:

### **Factual Background**[1]

On July 22, 2011, plaintiff, Anita Clay-Brown, and her family were at the Best Western River City Hotel in Decatur, Alabama. Amended Complaint (doc. 23 ¶¶ 13

---

[1] "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," therefore, the facts presented here, unless otherwise noted, are taken from the Amended Complaint (doc. 23). *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

& 14). At approximately 3:45 PM, plaintiff received word that her group had been told to leave by the police. *Id.* at ¶ 16. Plaintiff went to the front desk area of the hotel to investigate where she encountered two City of Decatur Police Officers. *Id.* at ¶ 17.

Plaintiff inquired about why the family was being asked to leave. *Id.* at ¶ 18. After inquiring a second time, plaintiff was grabbed by one of the City of Decatur Police Officers. *Id.* at ¶ 19. The City of Decatur Police Officers instructed the hotel staff to turn off the security cameras. *Id.* ¶ 20. Defendant Brandon Abbott then used a taser on plaintiff, multiple times, including after she had been immobilized, which caused her to fall to the ground, where she was ultimately rendered unconscious. *Id.* at ¶ 21. After plaintiff fell to the ground, either Defendant Brandon Abbott, and/or a second officer known as "Officer Moseley," shot her in the face with pepper spray. *Id.* at ¶ 23.

## **Standard of Review**

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, the court must "accept the allegations of the complaint as true and construe them 'in the light most favorable to the plaintiff.'" *Simmons v. Sonyika*, 394 F.3d 1335, 1338 (11th Cir. 2004) (citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)). Rule 8 does not require "'detailed factual allegations,' but it demands more

than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). "In order for the plaintiff to satisfy his 'obligation to provide the grounds of his entitlement to relief,' he must allege more than 'labels and conclusions'; his complaint must include '[f]actual allegations [adequate] to raise a right to relief above the speculative level.'" *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1964-65).

## Legal Analysis

Defendants have moved to dismiss Officer Brandon Abbott and the City of Decatur arguing that plaintiff has failed to state a claim under 42 U.S.C. § 1983 upon which relief can be granted. Plaintiff responds that the complaint is sufficient to state a claim under 42 U.S.C. § 1983 against each of the defendants. In the alternative, plaintiff asks for leave to amend her complaint if it is found deficient.

**I. Plaintiff has stated a claim under 42 U.S.C. § 1983 against the City of Decatur**.

A municipality is not subject to § 1983 liability under the doctrine of *respondeat superior* based upon the alleged unconstitutional conduct of its employees. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, (1978) ("In particular, we

conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") (emphasis in original); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[r]*espondeat superior* or vicarious liability will not attach under § 1983."); *see also Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Rather, it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Regardless of whether the basis of a § 1983 claim is an officially promulgated policy or an unofficially adopted custom, it must be the "moving force" behind the constitutional deprivation before liability may attach. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 819-820 (1985) (plurality opinion) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)). As a consequence, "not only must there be some degree of 'fault' on the part of the municipality in establishing or tolerating custom or policy, but there also must exist a causal link between the custom or policy and the deprivation." *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985) (citing *Tuttle*, 471 U.S. at 821).

     Plaintiff asserts that she brings this action "against the City of Decatur for its failure to properly train and supervise the individual Defendants in the proper use of

force, including deadly force, and techniques used to secure a suspect; proper dispatch policy, and its establishment of policies, procedures, practices, and customs regarding arrests that result in the excessive use of force and injuries to the Plaintiff." (doc. 23 at ¶ 4). In this regard, she alleges that the "City of Decatur failed to train its officers, and its delegates, on the proper use of a deadly weapon (tasers), including the potential for serious physical injury or death, and has failed to train, or adequately train, the Decatur police force in the appropriate use of such force." (*Id.* at ¶ 11). Plaintiff further alleges "The City of Decatur was also deliberately indifferent to the use of deadly force (tasers) by the fact that it knew their police officers carried tasers, used tasers to subdue citizens, and in doing so, allowed constitutional violations of excessive force to occur." (*Id.*).

The Supreme Court has held that: "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 389. This deliberate indifference must constitute "a deliberate choice to follow a course of action . . . by city policymakers." *Id.* "[A] plaintiff must present some evidence that the municipality knew of the need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*,

151 F.3d 1346, 1350 (11th Cir. 1998). The Eleventh Circuit has "held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Id.* at 1351. A § 1983 plaintiff must show a "history of widespread prior abuse" before a policymaker can be "put . . . on notice of the need for improved training or supervision." *Id.* (quoting *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990)).

There is no allegation whatsoever in the complaint that any person who qualifies as a policymaker of the City of Decatur was aware of any prior instance where any similar alleged constitutional deprivation had allegedly occurred. In *City of Canton*, the Supreme Court left open the possibility that a need to train could be "so obvious," that a city could be held liable without proof of a pattern of prior constitutional violations. 489 U.S. at 390. To date the use of deadly force where firearms are provided to police officers is the only hypothetical example of a need to train being "so obvious" as to not require proof of prior constitutional violations provided by the Supreme Court. *Gold*, 151 F.3d at 1352 (citing *City of Canton*, 489 U.S. at 390 n. 10).

Plaintiff alleges that the use of tasers constitutes the use of deadly force and therefore fits into the "so obvious" category. Defendant asserts that other courts that have examined the use of tasers have declined to include them in the same category of force as firearms. *See, e.g., Glenn v. City of Columbus, Ga.*, 375 Fed. Appx 928,

933 (11th Cir. 2009) (noting that there is a "middle" ground between the polar extremes of "deadly force and the use of a Taser gun"); *Gilliam ex rel. Waldroup v. City of Prattville*, 667 F. Supp. 2d 1276, 1293 (M.D. Ala. 2009) ("The use of a firearm against a person is presumptively the use of deadly force, while the use of a taser is not presumptively the use of deadly force."). In this case, the unarmed plaintiff alleges that defendants used a taser on her at least four times and then sprayed pepper spray in her face. (doc. 23 ¶¶ 20-23).[2]

A taser is used to incapacitate a person.[3] The American Heart Association released a study in April 2012 which concluded that taser electronic control devices can cause cardiac arrest and death.[4] The study also concludes that individuals "exposed to arrhythmogenic drugs and/or who have structural heart disease" or who have been tased at length or repeatedly, are at greater risk for cardiac arrest and death.

---

[2] Plaintiff was with her four grandchildren, son-in-law, and daughter simply occupying a hotel room. Amended Complaint (doc. 23) ¶ 14.

[3] *Fils v. City of Aventura*, 647 F.3d 1272, 1276 n. 2 (11th Cir. 2011) ("A 'taser' is a non-deadly weapon commonly carried by law enforcement. The taser administers an electric shock to a suspect by shooting two small probes into the suspect's body. The probes are connected to the firing mechanism via wires. Once fired, the probes lodge under the suspect's skin and administer an electric shock. This type of taser permits the officer to incapacitate a suspect from a modest distance. We refer to this type of taser when we say that someone was 'tased.'").

[4] Zipes, Douglas P., M.D., *Sudden Cardiac Arrest and Death Associated with Application of Shocks from a TASER Electronic Control Device,* JOURNAL OF THE AM. HEART ASS'N (published online at http://circ.ahajournals.org/content/early/2012/04/20/CIRCULATIONAHA.112.097584) (April 30, 2012).

JOURNAL OF THE AM. HEART ASS'N at 12. Amnesty International estimates up to 334 people were killed as a result of taser use by police officers in the United States from June 2001 to August 2008.[5] The court is not prepared to find that at least four administrations of an incapacitating device capable of causing death does not present a need to train that could be "so obvious" that a city could be held liable without proof of a pattern of prior constitutional violations.

Plaintiff's allegations taken as true establish more than a "sheer possibility that a defendant has acted unlawfully." *See Iqbal*, 556 U.S. at 678. Plaintiff has therefore met the pleading requirements as established by *Twombly* and *Iqbal* and defendant's motion to dismiss the City of Decatur is due to be denied.

## II. Plaintiff has failed to state a 42 U.S.C. § 1983 claim for violation of her Eighth and Fourteenth Amendment rights.

Plaintiff does not address defendant Abbott's motion to dismiss the claims under the Eighth and Fourteenth Amendments. Therefore, said claims are deemed abandoned and dismissed. *See Iraola & CIA v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284 (11th Cir. 2003); *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001).

---

[5] AMNESTY INT'L, *Less than lethal?: The use of stun weapons in US law enforcement*, AMNESTY INT'L PUB. (2008) (available online at
https://www.amnesty.org/ar/library/asset/AMR51/010/2008/en/530be6d6-437e-4c77-851b-9e581197ccf6/amr510102008en.pdf).

**III. Dismissal of official capacity claims against Abbott.**

Defendant Abbott asserts that "Because the City of Decatur is a separately named defendant in this action, plaintiff's official capacity claims against [Abbott] are superfluous and redundant and are due to be dismissed. As the court found in its Memorandum Opinion, dated February 28, 2013, (doc. 21) p. 3-5, defendant is correct.[6] Under *Busby*, 931 F. 2d at 776, keeping both the City and Abbott in his official capacity as defendants would be redundant. The official capacity claims against Abbott are therefore due to be dismissed.

**Conclusion**

Plaintiff has stated a claim under 42 U.S.C. § 1983 against the City of Decatur. That defendant's motion to dismiss (doc. 28) is therefore **DENIED**. Plaintiff's claims under the Eighth and Fourteenth amendment are dismissed. Defendant's motion to dismiss defendant Abbott in his official capacity only (doc. 30) is **GRANTED**.

**DONE** and **ORDERED** this the 25th day of April 2013.

_____
INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE

---

[6] Plaintiff acknowledges that when suits are maintained against both the local governmental entity and the individual defendant in his official capacity, precedent dictates the official capacity claim should be dismissed. (doc. 35) p. 11 n. 4.